IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Darryl Henderson, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) Civil Action No. 16-cv-9458 |
| Illinois Department of Corrections, David McGee, LaTosha Charles, Mary D. Schwarz, Morgan Hudson | ) ) Honorable Judge Coleman ) ) |
| *Defendants.* | ) **JURY DEMANDED** ) ) ) ) |

**FIRST AMENDED COMPLAINT**

Plaintiff Darryl Henderson, by his attorneys, complains against Defendants as follows:

**NATURE AND STATUTORY BASIS OF ACTION**

This is an action by Plaintiff Darryl Henderson, a former inmate in the custody of the Illinois Department of Corrections ("IDOC"), housed in the Northern Reception Center ("NRC") unit of Stateville Correctional Center ("Stateville"), whose constitutional rights have been violated by the Defendants' continued and consistent deliberate indifference toward his serious medical needs and by the Defendants' failure to provide accommodations for his disability during his incarceration at the NRC from August 4, 2016 to January 13, 2017.

Plaintiff brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. § 794 (the "Rehabilitation Act"). Plaintiff seeks actual, consequential, compensatory, and punitive damages.

## THE PARTIES

1.      Plaintiff Darryl Henderson ("Plaintiff" or "Henderson") is, and was at all times relevant to the allegations in this Complaint, a United States citizen and resident of Illinois. During the relevant time periods referenced in this Complaint, and specifically from August 4, 2016 to January 13, 2017, Henderson was incarcerated by the Illinois Department of Corrections ("IDOC") within the Northern Reception Center ("NRC") unit of Stateville Correctional Center ("Stateville"), located at 16830 S. Broadway Street, Joliet, IL 60434. Henderson was assigned Inmate No. M-29516 by IDOC.

2.      Defendant Illinois Department of Corrections is, and was at all times relevant to the allegations in this complaint, an executive agency of the State of Illinois that is responsible for the care, custody, treatment, and rehabilitation of all persons committed to its custody, and for all Illinois correctional institutions, including Stateville and NRC.

3.      On information and belief, Defendant David McGee ("McGee") was at all times relevant to the allegations in this Complaint, a Sergeant Correctional Officer at the NRC. Defendant McGee was responsible for the safety and wellbeing of the inmates at NRC. On information and belief, he has personal firsthand knowledge of the allegations of this complaint. Defendant McGee is sued in his individual capacity only.

4.      On information and belief, Defendant LaTosha Charles ("Charles") was at all times relevant to the allegations in this Complaint, a Correctional Officer at the NRC. Defendant Charles was responsible for the safety and wellbeing of the inmates at NRC. On information and belief, she has personal firsthand knowledge of the allegations of this complaint. Defendant Charles is sued in her individual capacity only.

5. On information and belief, Defendant Mary D. Schwarz ("Schwarz") was, at all times relevant to the allegations in this Complaint, a licensed physician's assistant employed by Wexford Health Services with responsibility for treating inmates at Stateville and the NRC. As a treating physician assistant at Stateville, Schwarz was responsible for the health and wellbeing of the inmates as well as the adequate provision of medical services. On information and belief, she has personal firsthand knowledge of the allegations of this complaint. Defendant Schwarz is sued in her individual capacity only.

6. On information and belief, Defendant Morgan Hudson ("Hudson") was, at all times relevant to the allegations in this Complaint, a correctional counselor at the NRC. Defendant Hudson was responsible for the safety and wellbeing of the inmates. On information and belief, he has personal firsthand knowledge of the allegations of this complaint. Defendant Hudson is sued in his individual capacity only.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over the subject matter of this Complaint pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(a).

8. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because at least one Defendant resides in this District and all of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

### Henderson Sustained Severe Injuries from a Gunshot to His Spine

9. On April 12, 2016, Henderson was shot in the spine and was taken to Condell Medical Center in Libertyville, Illinois. The examining doctors found that the injury had resulted in severe neurological damage and opined that Henderson would most likely never walk again

due to the severity of the damage. Henderson remained at Condell Medical Center for one week until he was taken to the Rehabilitation Institute of Chicago ("RIC") for physical therapy. As a result of the therapy, Henderson regained the ability to stand for brief periods of time and walk short distances; however, he continued to suffer from excruciating pain due to the nerve damage he suffered, as well as difficulties walking long distances and up stairs. Further, the nerve damage caused serious complications with Henderson's urinary system and bowel control.

10. The damage to Henderson's nervous system resulting from the gunshot wound was so severe that he required regular physical therapy in order to recover his mobility and reduce the pain he suffers. Henderson received physical therapy at the RIC and thereafter at the Cook County Jail prior to his admission to the NRC in August 2016.

11. The effects of Henderson's gunshot injury included the inability to walk, severe pain and discomfort throughout his body, cramps, swelling, constipation, heartburn, and other serious medical complications. To combat these ailments, Henderson required regular medical attention and pain medication. Without access to pain medication, the level of pain which Henderson experienced was drastically increased.

12. Henderson's daily life activities during his incarceration were heavily impacted by his injuries. Namely, Henderson required special accommodations to relieve himself of his bodily waste. Henderson was required to wear adult diapers due to his bowel control problems. These diapers required frequent changing, and due to Henderson's pain and limited mobility, he sometimes required assistance to change his diapers. Additionally, Henderson was unable to empty his bladder on his own without the use of a catheter. Specifically, Henderson used a urinary catheter to allow him to urinate, and needed to empty the catheter every four (4) hours;

4

otherwise he experienced extreme pain and discomfort. Finally, Henderson had difficulties walking up stairs and long distances due to the limitations on his mobility.

## Henderson's Arrival at the NRC

13. On August 4, 2016, Henderson was transported to NRC for intake. During Henderson's initial intake screening NRC staff observed that Henderson appeared to be in pain because of the length of time he was required to stand. During the intake process at NRC, Henderson had to lie on the ground because of his inability to stand for long periods of time.

14. That same day, Henderson was seen by physician's assistant Schwarz. Henderson explained his medical conditions and disabilities to Schwarz in detail. Schwarz wrote a "Special Needs Permit" indicating that Henderson was to be assigned to a lower bunk in a single cell (a cell by himself) on the first floor of the prison. The Special Needs Permit also indicated that Henderson was to be provided with crutches because of his inability to walk long distances. Finally, the Special Needs Permit indicated that Henderson required use of a catheter.

## Henderson Was Deprived of a First Floor Cell

15. Despite the issuance of a Special Needs Permit indicating that Henderson should be assigned to a single cell due to his medical conditions, he was initially assigned to a cell with another inmate.

16. On August 5, 2016, Henderson saw Schwarz again and explained that he had not been assigned to a single cell as authorized by Schwarz.

17. That same day, Henderson was moved to cell number A-305, a single cell located on the third floor. Henderson told Charles that he could not be moved to the third floor because he had been approved for a first floor cell and had extreme difficulty walking up and down stairs due to his injuries. Regardless, Charles moved Henderson to the third floor cell.

18. As a result of the failure to accommodate Henderson's disability by providing him with a first floor cell, Henderson was forced to walk up and down two flights of stairs on a regular basis, without any type of assistance. The increased hardship on his body resulted in Henderson experiencing severe back pain, pain in his feet, back cramping, and uncomfortable numbing sensations.

**Henderson Was Deprived of Sterile and Clean Conditions For Use of a Catheter**

19. Henderson required use of a catheter to urinate. Catheters must be sterilized frequently in order to minimize the risk of infection, and patients regularly wear gloves while using the catheter for sanitary purposes. The use of an improperly sterilized catheter increases the risk of various infections, including urinary tract infection.

20. Henderson regularly requested to be provided with iodine to sterilize his catheter, but was never provided with iodine or any other suitable means of sterilization. Further, Henderson was rarely provided gloves to use his catheter in a sanitary manner.

21. Without iodine and gloves, Henderson had an increased risk of developing an infection due to unhygienic conditions.

**Henderson Was Deprived Use of Bathroom Facilities in the Prison Yard**

22. Henderson's catheter needed to be emptied at least every four (4) hours. Being required to go for longer periods of time without the ability to empty the catheter resulted in significant pain and discomfort to Henderson.

23. Henderson was often required to spend eight (8) hours outside in the prison yard for "recreation time." However, there were no restrooms or other suitable facilities where Henderson could empty his catheter, and Henderson was not provided with access to a restroom during this time.

CHI 68435937v5

24. Henderson told Defendant Hudson that he needed to empty his catheter while in the prison yard, but Hudson refused to take any actions to provide Henderson with the necessary accommodations for his condition.

25. Henderson's inability to empty his catheter regularly during visits to the prison yard caused him significant pain and discomfort.

**Henderson Was Not Provided With Proper Treatment for Bowel and Urological Issues**

26. As a result of Henderson's injuries, Henderson had significant urological and bowel control issues. In addition to his need to use a catheter, Henderson was required to wear adult diapers due to his inability to control his bowels. For this reason, Henderson required an adequate supply of diapers and "chux" pads (disposable bed underpads) in order to maintain sanitary conditions in his cell.

27. Henderson told nurses and correctional officers that he needed diapers and chux. Additionally, he requested diapers and chux in multiple grievances. Despite his requests, Henderson often did not receive the necessary diapers or chux. As a result, on numerous occasions Henderson endured unsanitary conditions in his cell due to his inability to control his urination and bowels.

28. While at NRC, Henderson's urological and bowel issues worsened. He experienced penis discharge, bloody feces, constipation, and vomiting due to constipation. Additionally, Henderson developed a urinary tract infection which was not properly treated. These conditions resulted in Henderson experiencing increased pain and discomfort.

29. Henderson's bowel issues were further aggravated by the extremely starch-based diet he was provided, which lacked sufficient fiber. This diet contributed to digestive problems which caused Henderson extreme stomach pain and constipation.

30. Henderson requested stool softener for his constipation and digestive issues. While he was initially provided with stool softener in August, he was not given stool softener for the remainder of his time at Stateville.

31. Because of the constipation and digestive problems, Henderson did not want to eat, and consequently, lost a significant amount of weight, further contributing to his health problems.

### Henderson Was Not Properly Treated for a Urinary Tract Infection

32. Upon his arrival at NRC, Henderson advised NRC staff that he believed he was suffering from a urinary tract infection (UTI). When Henderson was first examined by Schwarz, pus was found in his catheter bag, indicating that Henderson likely had acquired a UTI.

33. Henderson's urine was tested shortly after his admission and the test results confirmed that Henderson did in fact have a UTI.

34. While Henderson was initially prescribed an antibiotic to treat the UTI, he was not regularly provided with the medication as prescribed. As a result, Henderson continued to experience urinary pain, indicating that the UTI had not been properly treated.

### Henderson Was Not Provided With Necessary Physical Therapy

35. Henderson's medical condition required regular physical therapy to alleviate pain and regain his lost mobility. Despite multiple requests by Henderson to NRC staff to be provided with appropriate and regular physical therapy, Henderson was never provided any physical therapy during his incarceration at the NRC.

36. Henderson submitted several grievances requesting physical therapy, which were ignored. A nurse at the NRC informed Henderson that he would not receive any physical therapy and that he could simply squeeze a towel to achieve the same effect.

37. The lack of access to physical therapy caused Henderson's recovery to take significantly longer than necessary, and caused him to endure substantially greater pain than he would have had with regular and appropriate physical therapy.

**Henderson Was Not Provided With Adequate Medication for Pain and Other Conditions**

38. During his incarceration at NRC, Henderson required medication to alleviate pain and mitigate other complications resulting from his injuries. Henderson, while at Stateville, was prescribed numerous types of medications, which was to be delivered to his cell daily. Despite the medications being prescribed, they were not regularly given to Henderson for consumption.

39. On August 4, 2016, Henderson was prescribed five different medications by Schwarz: (1) Colace, (2) Fiber-lax Captabs, (3) Ibuprofen, (4) Tramadol, and (5) disposable enemas. Henderson's medication administration records indicate that he was not given the Colace, Fiber-lax Captabs, Ibuprofen, and disposable enemas in the amount that was prescribed.

40. On August 18, 2016, Henderson was prescribed Macrobid for his UTI. Henderson's medication administration records indicate that he only received Macrobid on one occasion.

41. On September 8, 2016, Henderson was once again prescribed Colace, Fiber-lax, and Tramadol by Schwarz. Henderson's medication administration records indicate that he was not given the Colace or Fiber-lax in the amount that was prescribed.

42. On September 23, 2016, Henderson was prescribed Naproxen for pain. There is no medication administration record indicating that Henderson was ever given this medication.

43. On October 11, 2016, Henderson was prescribed Naproxen and Methocarbamol for pain. Henderson's medication administration records indicate that he was not given either medication in the amount that was prescribed.

9

44. Despite regular and repeated requests for pain medication, Henderson was not provided with pain medication as prescribed, and was not provided with any pain medication whatsoever after November 8, 2016.

45. Colace and Fiber-Lax are used to alleviate constipation. Henderson's failure to receive these medications as prescribed contributed to his pain and suffering as discussed above.

46. Tramadol, Ibuprofen, Naproxen, and Methocarbamol are used to alleviate pain. Without this medication Henderson often could barely move due to the severity of pain he experienced. Henderson's failure to receive these medications as prescribed contributed to his pain and suffering as discussed above.

47. Macrobid is used to treat urinary tract infections. Without regular administration of this medication Henderson's urinary tract infection was not properly treated, thus resulting in a prolonged period of pain and discomfort.

48. On November 8, 2016, Henderson saw Defendant Schwarz and explained that he remained in serious pain and discomfort and asked for additional pain medication, physical therapy, and other appropriate medical treatment. Schwarz refused to prescribe Henderson pain medication or provide further medical treatment.

## Henderson Was Not Provided With Crutches

49. Henderson's mobility was extremely limited as a result of his injuries and he experienced significant pain when required to walk longer distances or use stairs. Despite the issuance of a Special Needs Permit indicating that Henderson needed crutches to aid with walking, he was never provided with crutches.

CHI 68435937v5

50. Before numerous court hearings, Henderson requested crutches from the correctional officers on duty so that he could comfortably walk to court. Each of those requests was ignored.

51. Without crutches, Henderson was forced to walk longer distances, without any type of assistance. The increased hardship on his body resulted in Henderson experiencing severe back pain, pain in his feet, back cramping, and uncomfortable numbing sensations.

**Defendants' Deliberate Indifference to Henderson's Medical Condition and Disabilities**

52. In his first weeks at Stateville, Henderson regularly spoke with Defendant Charles, the correctional officer for Henderson's cell block. Henderson explained to Charles that he suffered from serious neurological injuries that required regular medical treatment. He also explained that his injuries impacted his bodily functions, such as his ability to urinate. Specifically, Henderson told Charles that he required use of a catheter. Henderson further explained that he was unable to empty his catheter as required during visits to the prison yard. On multiple occasions, Henderson asked Charles to see a physician or a nurse because he was experiencing pain, cramping, numbing sensations, and urological and bowel issues. Charles repeatedly denied or ignored Henderson's requests for medical attention and appropriate accommodations for his disability, and failed to take actions to ensure that Henderson's medical needs were properly met. Each time that Charles denied or ignored Henderson's requests, Charles knew of, and ignored, Henderson's serious medical needs and disability.

53. When Henderson spoke with Charles, he also explained that his injuries impaired his ability to walk, which made getting to his third floor cell difficult. Henderson requested several times to be moved to a cell on the first floor, as approved upon issuance of his Special Needs Permit on August 4. Charles denied each request to move Henderson to a first floor

11

cell. Each time that Charles denied Henderson's requests, Charles knew of, and ignored, Henderson's serious medical needs and disability.

54. Henderson further explained on multiple occasions to correctional officers at Stateville that his injury impaired his ability to walk, and that he required crutches when he went to court due to the amount of walking. Those requests were repeatedly denied. Each time IDOC denied Henderson's request for crutches, IDOC knew of, and ignored, Henderson's disability.

55. Henderson also asked Charles several times that he be permitted to speak with the sergeant on duty, Defendant McGee, regarding his medical condition. Charles refused those requests on multiple occasions.

56. When Henderson was able to speak with McGee, Henderson explained that he had serious medical issues which required medical attention. Additionally, Henderson requested to receive physical therapy and to be moved to a cell on the first floor. McGee responded to Henderson's requests by telling Henderson that his medical issues were "not my problem" and "fuck you".

57. McGee repeatedly denied or ignored Henderson's requests for medical attention and appropriate accommodations for his disability, and failed to take actions to ensure that Henderson's medical needs were properly met. Each time that McGee denied or ignored Henderson's requests, Sergeant Correctional Officer McGee knew of, and ignored, Henderson's disability and serious medical needs and disability.

58. As a direct and proximate result of the above actions and omissions, Henderson's medical condition worsened during his incarceration at NRC. Had Henderson received proper medical attention during his incarceration at NRC, his physical condition would have been significantly improved and he would now experience less pain as a result.

## COUNT I

### Claim Under 42 U.S.C. § 1983 for Violation of the Eighth Amendment
### (Deliberate Indifference to Serious Medical Needs)

59. Henderson realleges and incorporates herein the allegations set forth in paragraphs 1 through 58 above.

60. Defendants intentionally or recklessly failed to provide Henderson with adequate medical care, failing to give Henderson the baseline level of care for his severe physical injury. Defendants' acts and omissions inflicted pain upon Henderson and subjected him to an unreasonable danger of complications from untreated conditions.

61. Defendant Schwarz demonstrated deliberate indifference to Henderson's serious medical needs, by failing to provide Henderson with timely or reasonable medical attention and/or treatment during his incarceration, thereby contributing to Henderson's pain and suffering during his incarceration.

62. Defendants Charles and McGee demonstrated deliberate indifference to Henderson's serious medical needs, by repeatedly refusing or ignoring multiple requests by Henderson for access to proper medical care, thereby contributing to Henderson's pain and suffering during his incarceration.

63. Defendant Hudson demonstrated deliberate indifference to Henderson's serious medical needs, by refusing or ignoring Henderson's requests for accommodation for his medical conditions, thereby contributing to Henderson's pain and suffering during his incarceration.

64. The reckless disregard of Defendants Schwarz, Charles, McGee and Hudson to Henderson's serious medical needs, under color of state law and without justification, constituted deliberate indifference to an objectively serious and subjectively known danger posing a

13

substantial risk of serious harm to Henderson, and amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## COUNT II

### Discrimination Based on Disability (Title II of ADA)

65. Henderson realleges and incorporates herein the allegations set forth in paragraphs 1 through 64 above.

66. Title II of the Americans with Disabilities Act (ADA) provides that no qualified person with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

67. The Illinois Department of Corrections is a "public entity" within the meaning of Title II of the ADA.

68. Henderson suffered from a physical impairment that substantially impaired his ability to control his severe pain, control his bladder, control his bowels, and walk normally. Pain, bowel and bladder control and walking all constitute major life activities under Title II. Therefore Plaintiff is a "qualified person with a disability" as defined in 42 U.S.C. § 12131(2).

69. Henderson suffered severe pain and discomfort due to his injuries throughout the period of his incarceration at NRC, which was exacerbated by IDOC's failure to properly provide Henderson with pain and other medications. The pain was constant and caused Henderson to have difficulty sleeping.

70. Henderson's impaired ability to walk caused him severe pain when having to climb stairs or walk long distances. Henderson's cell was on the third floor, forcing him to walk

14

up and down stairs whenever he needed to leave his cell, such as to use the shower and visit the prison yard.

71. Henderson required regular physical therapy as a result of his injuries. However, despite multiple, repeated requests to numerous IDOC personnel, Henderson was never provided with physical therapy during his incarceration at NRC. Because of IDOC's failure to provide Henderson with physical therapy, he was required to suffer severe pain when he needed to leave his cell to make use of the services or programs made available by IDOC, and thus was unable to make use of the services and programs provided by IDOC on the same basis as other inmates.

72. Because of Henderson's impaired ability to walk he was to be assigned a cell on the first floor and provided with crutches. However, despite making numerous requests, Henderson was never moved to a first floor cell. He also never received crutches or any other device to assist him in walking. Because of IDOC's refusal to accommodate Henderson's disability, he was required to suffer severe pain when he needed to leave his cell to make use of the services or programs made available by IDOC, and thus was unable to make use of the services and programs provided by IDOC on the same basis as other inmates.

73. Henderson required the use of a catheter due to his impaired ability to empty his bladder, which created difficulties when he was required to visit the prison yard. Henderson was required to empty his catheter at least every four (4) hours in order to avoid severe pain and discomfort; however, there was no restroom or other suitable facility in the prison yard where he could empty his catheter. On multiple occasions Henderson requested access to a restroom, but his requests were denied. As a result, Henderson was unable to empty his catheter while he was in the prison yard, resulting in severe pain and discomfort.

74. Because of IDOC's refusal to accommodate Henderson's disability, he was subject to severe pain every day he was required to spend more than four hours in the prison yard without the ability to empty his urinary catheter. Because IDOC did not make reasonable accommodations for Henderson, he was unable to use the recreational facilities on the same basis as other inmates.

75. To alleviate the pain and discomfort caused by his disabilities, Henderson required regular pain medication. However, Henderson was deprived of pain medication on numerous occasions, and received no pain medication whatsoever after November 8, 2017. While Henderson requested pain medication on numerous occasions thereafter, his requests were routinely ignored. This caused Henderson to experience pain so severe that it sometimes prevented him from moving or going about daily activities. IDOC's failure to provide Henderson with adequate pain medication resulted in his inability to make use of the services and programs provided by IDOC on the same basis as other inmates.

76. Because Henderson was unable to make use of the services and programs provided by IDOC on the same basis as other inmates, IDOC treated Henderson disparately on account of his disability in violation of the ADA.

77. By reason of IDOC's conduct, Henderson is entitled to all legal and equitable remedies available under the ADA.

## COUNT III

### Discrimination Based on Disability (Rehabilitation Act)

78. Henderson realleges and incorporates herein the allegations set forth in paragraphs 1 through 77 above.

16

79. Henderson is a qualified individual with a disability under 29 U.S.C. § 705 of the Rehabilitation Act.

80. IDOC is a recipient of federal funds, as required under the Rehabilitation Act.

81. Henderson, as an inmate of IDOC housed at the NRC, was entitled to equal benefit of the services and programs provided by IDOC.

82. IDOC denied Henderson reasonable accommodation for his disabilities. Without these accommodations Henderson, because of his disabilities, was unable to make use of services and programs provided by the IDOC on the same basis as other inmates.

83. IDOC has conducted itself intentionally, deliberately, willfully, and in callous disregard for the rights of Henderson.

84. By reason of IDOC's conduct, Henderson is entitled to all legal and equitable remedies available under the Rehabilitation Act.

WHEREFORE, Henderson respectfully requests the following relief:

A. Compensatory damages to compensate Henderson for the deprivation of his constitutional right to be free from cruel and unusual punishment, including, but not limited to, the physical pain and emotional distress caused by such deprivation, in an amount to be determined at trial;

B. Compensatory damages suffered by Henderson as a result of Defendant IDOC's violation of Title II of the Americans With Disabilities Act, in an amount to be determined at trial;

C. Compensatory damages suffered by Henderson as a result of Defendant IDOC's violation of the Rehabilitation Act, in an amount to be determined at trial;

D. Punitive damages to sanction Defendants' deliberate indifference to Henderson's physical safety and to deter Defendants and others from engaging in similarly unconstitutional conduct in the future, in an amount to be determined at trial

E. A declaratory judgment that the acts and practices of the Defendants violated Henderson's constitutional rights;

F. An award of Plaintiff Henderson's costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

G. Any other relief which this Court many deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable by jury.

Respectfully submitted,

Dated: September 28, 2017      By:  /s/ Jeffrey P. Dunning
Jeffrey P. Dunning
Matthew J. Levinstein
Jacqueline V. Brousseau
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312-456-8400
Facsimile: 312-456-8435

Counsel for Plaintiff Darryl Henderson

CHI 68435937v5