UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARRYL HENDERSON, #M29516 ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 cv 9458 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| ILLINOIS DEPARTMENT OF CORRECTIONS, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Darryl Henderson filed a three-count First Amended Complaint, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment by defendant corrections officers LaTosha Charles and Morgan Hudson, and failure to accommodate his disability in violation of the Americans with Disability Act, 29 U.S.C. §12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, by the Illinois Department of Corrections ("IDOC"). Defendants, Charles, Hudson, and IDOC, move to dismiss [47] the First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein the motion is denied.

**Background**

The Court accepts the following facts as true for purposes of this motion. Darryl Henderson, an inmate at Stateville Correctional Center, suffered a gunshot wound on April 12, 2016, that injured his spine, causing severe neurological damage. As a result of his injuries, Henderson endures pain, has difficulty walking long distances and climbing stairs. The wound also caused serious complications to his urinary system and bowel control. Henderson uses a urinary catheter, which must be emptied every four hours to avoid causing him severe pain and discomfort.

1

In August 2016, Henderson was transferred to the Northern Reception Center ("NRC") unit of Stateville. The physician's assistant, defendant Mary D. Schwarz, met with Henderson the day of his arrival at NCR. She provided him with a "Special Needs Permit" indicating that Henderson was to be assigned to a lower bunk in a single cell on the first floor of the prison. It further provided that Henderson have crutches to assist him with walking. The "Special Needs Permit" also indicated that Henderson was required to use a catheter.

Despite the "Special Needs Permit" Henderson alleges that he was initially placed in a cell with a roommate and then he was moved to a third floor cell. Henderson informed defendant Charles that he had been approved for a first floor cell and that his injuries made it difficult for him to use stairs. The move to the third floor forced Henderson to walk up and down two flights of stairs on a regular basis without any type of assistance. He was also not provided with crutches as directed by the "Special Needs Permit." As a result he experienced severe back pain and cramping, foot pain, and uncomfortable numbness.

Henderson requires a catheter to urinate, which must be sterilized to minimize the risk of infection. Henderson regularly requested that he be provided with iodine to sterilize his catheter and gloves to wear, but he was provided with neither nor any other means of sterilization. Henderson was also denied use of bathroom facilities while in the prison yard. His catheter needs to be emptied at least every four hours. Henderson was often required to spend eight hours outside in the prison yard, but with no suitable bathroom facilities where he could empty his catheter, he suffered significant pain and discomfort. Henderson informed Hudson that he needed to empty his catheter while in the prison yard, but he refused to take any action to provide Henderson with the necessary accommodations for his condition.

Henderson's injuries also caused him the inability to control his bowels, which required him to wear diapers and use a disposable bed pad to maintain sanitary conditions in his cell. Despite

2

requests and grievances, Henderson did not receive the supplies he needed and had unsanitary conditions in his cell and his physical condition worsened.

In the first weeks at NCR, Henderson regularly spoke with Charles, the correctional officer assigned to his cell block. He explained to Charles the he suffered from serious neurological injuries that required regular medical treatment, and impacted his bodily functions. He informed Charles that he needed the use of a sterile catheter and the ability to empty it frequently. Henderson also explained to Charles why he needed a first floor cell and that climbing the stairs was difficult. He requested to be moved to a first floor cell as approved in his "Special Needs Permit," but Charles denied each request.

According to the complaint, the continued denial of accommodations for his disability and deliberate indifference to his medical needs caused his condition to worsen and he experienced severe pain. Henderson makes a variety of allegations about his medical care and treatment that are not relevant to the instant motion.

**Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face and raising the right to relief above speculation. *Ashcroft v. Iqbal*, 556 U.S. 62, 678 (2009). When reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Pisciota v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

**Discussion**

The IDOC defendants move to dismiss the First Amended Complaint in its entirety.[1] Defendants argue that Henderson fails to state a claim against Hudson and Charles for deliberate indifference to a serious medical need because he has not alleged facts showing they had a duty to act. Defendants also argue that Henderson conflates his ADA and RA counts with a failure to his deliberate indifference claim or a medical negligence claim that is not cognizable in this situation. The Court will address each argument in turn.

To state a claim of deliberate indifference, a plaintiff must allege that (1) his medical condition was objectively serious and (2) that prison officials were deliberately indifferent to his medical needs, which is a subjective standard. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir. 2000).

Here, the defendants do not dispute that Henderson's medical condition was objectively serious. *See Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997) (a condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain"). They argue instead that Henderson fails to allege that Hudson and Charles had the authority and the duty to take any action to alleviate Henderson's condition. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff only has to allege that a prison official, acting with a culpable state of mind, knew of a significant risk to the inmate's health and disregarded that risk. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Henderson has sufficiently alleged that both Hudson and Charles were informed of the "Special Needs Permit" issued upon his arrival at the NCR that set forth exactly the accommodations Henderson needed based on his injuries. Henderson further alleges that also informed them that he was suffering pain as a result of being on the third floor and from lacking access to restroom facilities for up to eight hours a day. The allegations also clearly assert that both

---

[1] Defendant Schwarz, the only remaining medical defendant, did not move to dismiss the deliberate indifference claim against her.

4

Hudson and Charles disregarded the risk to Henderson by failing to act in any manner despite his "Special Needs Permit." Compare this situation to the one in *Ames v. Snyder*, where the court found that the plaintiff had stated a claim for deliberate indifference for refusing to move the plaintiff to a lower bunk or ground floor cell. *Ames v. Snyder*, No. 02 C 4043, 2002 WL 31818985, at *4 (N.D. Ill. Dec. 13, 2002) (Pallmeyer, J.). There, the court reasoned:

> Because Plaintiff's treating physician ordered no such placement, the court questions whether [defendant] Wright would have recognized a need for placing Plaintiff in a lower bunk or ground floor cell. But if Plaintiff had an obvious need for special accommodations that Wright should have been aware of, Kurian's failure to issue a permit would not insulate Wright from liability.

*Id.* Here, Henderson had been issued a permit and yet Hudson and Charles refused to act to institute the medical requirements outlined in the permit. This is sufficient to state a claim under section 1983 for deliberate indifference to a serious medical need. This Court therefore denies the motion as to Count I.

Defendants also move to dismiss Counts II and III for failure to state a claim for disability discrimination under the ADA and the RA. To state his claims under Title II of the ADA and the RA, Henderson must allege that, "(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). For the Rehabilitation Act to apply, IDOC must accept federal funds, which all states do. *Id.* at 671 ("[T]he analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons") (citations omitted). Defendants do not meaningfully dispute that Henderson has alleged that he is a qualified person with a disability based on his neurological injuries stemming from his gunshot wound. The only question is whether he has sufficiently alleged that IDOC denied him access to any program or service.

Defendants argue that Henderson conflates a claim based on disability with his medical

claim and that he is really only alleging a claim based on his medical treatment or lack thereof. The First Amended Complaint however sets forth facts showing that IDOC approved certain accommodations for his disability to alleviate some of the more onerous effects of his injuries by issuing "Special Needs Permits" and by failing to implement those accommodations, IDOC is denying him access to his cell and the restroom on the same basis as other inmates. Access to meals, showers, and toilet facilities that are made available to inmates are a "program or activity" within the meaning of the ADA and RA. *Jaros*, 684 F.3d at 672; *see also Clemons v. Dart*, 168 F.Supp.3d 1060, 1066-1068 (N.D.Ill. 2016).

In *Jaros*, the Seventh Circuit held that the plaintiff, who had difficulty walking, standing, and bending due to a hip injury, had stated a claim based on the failure of the prison to either add grab bars in the shower or transfer the plaintiff to another facility with those accommodations. *Jaros*, 684 F.3d at 672. Similarly, here, Henderson alleges that IDOC's failure to provide a ground floor cell, crutches or other walking aid and suitable restroom facilities to empty his catheter during the hours he is in the yard made it impossible for him to use the prison facilities without severe pain and discomfort. Therefore, this Court finds that Henderson has stated a claim for violations of the ADA and RA for failure to accommodate his disability. This Court denies the motion to dismiss Count II and III.

**Conclusion**

Based on the foregoing, this Court denies defendants' Motion to Dismiss [47].

IT IS SO ORDERED.

Date: 5/29/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

6